UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,           No. 07-CR-20208-DT

vs.

STEPHEN LEE BOWERS,

              Defendant.
_____/

OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO DISMISS INDICTMENT

    At a session of said Court, held in
    the U.S. Courthouse, Detroit, Michigan
    on   December 17, 2007

    PRESENT: Honorable Gerald E. Rosen
                    United States District Judge

I. INTRODUCTION

Defendant Stephen Lee Bowers is charged in a two-count indictment with the manufacture and possession of child pornography in violation of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2252(a)(4)(B). On April 11, 2007, Bowers' housemate, Titania Valdez, set in motion a chain of events which concluded with the FBI being informed that Valdez had found a photo album contain pornographic images involving children in Bowers' bedroom. Later that day, FBI agents visited the residence and viewed the photos contained in the album. A search warrant was subsequently obtained and a secondary

1

search of the premises was conducted. During the search, in addition to more homemade photo albums, agents found pornographic magazines and videotapes, as well as cutout magazine photographs in which Bowers' children's faces were pasted on the bodies of naked models. Bowers was thereafter arrested and on April 18, 2007, he was indicted on charges of production and possession of child pornography.

This matter is presently before this Court on Bowers' Motion to Dismiss his Indictment. In this motion, Bowers seeks dismissal of his indictment contending that the federal pornography statutes under which he is charged are unconstitutional as applied to his case. The Court heard the oral arguments of counsel on this matter on September 10 and October 10, 2007 and thereafter, requested supplemental briefing. The parties have complied with the Court's request. Having reviewed and considered the parties briefs and the oral arguments of counsel the Court is now prepared to issue its ruling.

As indicated, the photographs giving rise to the charges against Bowers were found in his residence in a photo album. After his arrest, in a post-*Miranda* letter, Bowers admitted taking the photos and also described various acts that he had committed involving his 10-year-old daughter and other girls around his daughter's age. The admitted acts included photographing himself in various stages of undress in the presence of the girls and photographing himself placing his genitals on his daughter's mouth and other parts of her body while she was sleeping. Bowers further admitted that he showed these pictures, which were developed on automatic Polaroid film produced in the

Netherlands, to "lots" of other people.

## II. DISCUSSION

Defendant Bowers argues that because the activities at issue were noncommercial and had no substantial effect on interstate commerce, the Government is without jurisdiction to prosecute him.[1] The two statutes under which Bowers was indicted contain substantially the same language in describing the interstate commerce nexus.

18 U.S.C. § 2251(a) provides:

> ***Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in***, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in ***any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e)***, if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, ***if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer***, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a) (emphasis added).[2]

---

[1] Bowers contends only that the statutes, as applied to his case, are unconstitutional. He concedes that the Sixth Circuit has refused to hold the statutes at issue here *facially* unconstitutional.

[2] 18 U.S.C. § 2252(a)(4)(B) similarly provides:

> **(a)** Any person who --
> * * *
> **(B)** knowingly possesses 1 or more books, magazines, periodicals, films,

3

Although certainly not the most artfully written statute, it is clear from a reading of the full text of the statute and as appears from the placement of the commas in the text, § 2251(a) provides three independent jurisdictional bases:

1. "if [the defendant] knows or has reason to know that such visual depiction of [sexually explicit] conduct will be transported in interstate or foreign commerce or mailed,"

2. "if such visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or"

3. "if such visual depiction has actually been transported in interstate or foreign commerce or mailed."

Courts construing other provisions of the child pornography statutes have reached the same conclusion. For example, in *United States v. Cramer*, 21 Fed. App'x. 138 (3rd Cir. 2007), the Third Circuit construed 18 U.S.C. § 2251(b)[3] and held that there was no

---

video tapes, or other matter **which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce,** *or which was produced using materials which have been mailed or so shipped or transported*, by any means including by computer, if --

    **(I)** the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

    **(ii)** such visual depiction is of such conduct;

shall be punished as provided in subsection (b) of this section.

[3] Section 2251(b) is in all material respects identical to Section 2251(a) but Section 2251(b) applies to the manufacture of child pornography by "a parent, legal guardian, or person having custody or control of a minor," while Section 2251(a) -- the section under

independent requirement that the defendant "know or have reason to know" that the visual depiction of child pornography produced using materials that were shipped in interstate commerce would be itself transported in interstate or foreign commerce. "Instead, all three clauses. . . are applied to the words or phrases immediately preceding them in the opening clause of 18 U.S.C. § 2251(b). . . and *qualify the independent conditions*, for which the violation of any one will result in punishment." *Id.* at 141. (Emphasis added.)

In *United States v. Chambers,* 441 F.3d 438 (6th Cir. 2006), the Sixth Circuit similarly rejected the defendant's argument that he could not be prosecuted for violation of 18 U.S.C. 2252(a)(1)[4] because there was no evidence that he was aware that interstate or foreign commerce would be used or that he intended his pornographic e-mails to travel outside the state. The Sixth Circuit found that no such evidence was required explaining:

> The *scienter requirement. . . does not extend to the fact that the materials which were knowingly shipped traveled through interstate or foreign commerce*. That is, the government is not required to prove that the defendant knew that channels of interstate commerce would be utilized when he shipped the images; rather, that fact in the statute is "jurisdictional." . . . Thus, the term "knowingly" does not apply to the jurisdictional fact that the depictions traveled in interstate or foreign commerce, and the government need not prove that when [the defendant] knowingly shipped the images that he also knew they would travel by

---

which Defendant Bowers is charged in this case -- applies to the manufacture of child pornography by "any person." (The Government has charged Bowers under this section instead of § 2251(b) because his conduct allegedly involved both his daughters and other minors.)

[4] Section 2252(a)(1) prohibits "knowingly transport[ing] or ship[ping] in interstate or foreign commerce [any child pornography.]

5

interstate commerce.

*Id.* at 450; *see also United States v. Robinson*, 137 F.3d 652 (1st Cir. 1998) (holding that there is no jurisdictional scienter requirement for possession of child pornography under 18 U.S.C. § 2252(a)(4)(B)).

Here, it is the second jurisdictional clause of § 2251(a) -- production through the use of materials transported in interstate or foreign commerce -- that is applicable. The photographs at issue were produced on Polaroid film that was manufactured in the Netherlands.

The Sixth Circuit has repeatedly found that the production of pornography using equipment or materials produced in other states or countries sufficiently affects interstate commerce to pass constitutional muster. *See e.g., United States v. Chambers*, *supra*, 441 F. 3d 438 (Polaroid film produced in either Massachusetts or the Netherlands provided sufficient interstate/foreign commerce nexus); *United States v. Andrews*, 383 F. 3d 374 (6th Cir 2004) (pen camera with which defendant took nude pictures of pre-teenage girls that traveled in interstate commerce held to provide sufficient interstate commerce nexus); *United States v. Brown*, 2006 WL 3203747 (6th Cir. 2006) (jurisdiction based on camera's travel in foreign commerce held sufficient); *United States v. Gann* 160 Fed. App'x. 466 (6th Cir. 2005) (interstate travel of photography materials sufficient).

*Chambers* is particularly instructive as that case presents substantially similar facts as in this case, as well as the very same argument challenging the constitutionality of the

6

possession-of- child-pornography statute.[5] In that case, the defendant was convicted of possession of child pornography based upon the discovery of four picture albums, including sixteen Polaroid photos depicting Chambers and minor boys ages 13, 15, and 17 engaged in oral sex, and various other nude photos of the boys. The only evidence the government put forth in support of the interstate commerce connection was that the Polaroid film used by Chambers in taking the photos was produced either in Massachusetts or the Netherlands. Chambers, like Bowers, argued that the mere fact that the unused Polaroid film traveled in interstate commerce and was later used for illicit purposes is an insufficient nexus to interstate commerce and, therefore, 18 U.S.C. § 2252(a)(4)(B) was unconstitutional as applied to his case.

The Sixth Circuit reviewed its own precedent and Supreme Court decisions underlying that precedent and concluded that there was no merit to Chambers' argument. The Court was particularly persuaded by the Supreme Court's decision in *Gonzalez v. Raich*, 545 U.S. 1 (2005), which involved California's legalization of the use of medical marijuana and whether Congress had the authority to regulate personal use and production of marijuana via the Commerce Clause.

The *Raich* Court found that the Commerce Clause gave Congress the power to regulate the commodity of marijuana even though its production was not intended to end

---

[5] Chambers was also charged and convicted with transportation of child pornography via computer and transporting minors across state lines for purposes of criminal sexual activity.

up in "interstate markets." The Court found the marijuana case analogous to its earlier decision in *Wickard v. Filburn*, 317 U.S. 111, (1942). *Wickard* upheld congressional authority to regulate the production of wheat for personal usage via the Commerce Clause even though the wheat was not intended to end up on the interstate markets. The factual predicate in *Raich,* in the Supreme Court's view, provided an analogous situation, where the production of wheat for personal use was regulated via the Commerce Clause much like the production of marijuana for personal usage. Congressional authority to regulate this production was upheld because, despite the fact both products were grown for personal use, the production of each still has an effect on interstate commerce. The Court reasoned:

> While the diversion of homegrown wheat tended to frustrate the federal interest in stabilizing prices by regulating the volume of commercial transactions in the interstate market, the diversion of homegrown marijuana tends to frustrate the federal interest in eliminating commercial transactions in the interstate market in their entirety. In both cases, the regulation is squarely within Congress' commerce power because production of the commodity meant for home consumption, be it wheat or marijuana, has a substantial effect on supply and demand in the national market for that commodity.

545 U.S. at 19.

Applying *Raich*, the Sixth Circuit noted in *Chambers* that the defendant there was charged with possession and transportation of 16 "homegrown" pictures of child pornography which the defendant produced on Polaroid film that was manufactured in Massachusetts or the Netherlands. Like Bowers, the defendant in Chambers claimed that

the production of the images did not affect interstate commerce nor did he plan to distribute them through interstate commerce. 441 F.3d at 451. However, the court found that argument unpersuasive stating that Congress has power "to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Id.* at 454. The court further explained that child pornography is within the "class of activities" that Congress did intend to regulate by passing Section 2252. Just as personal production of wheat and marijuana have been found to affect interstate markets, "Congress has a rational basis for believing that homegrown child pornography can feed the national market and stimulate demand." *Id.*[6] This finding has been followed in subsequent Sixth Circuit decisions with little to no support for the argument advanced by Bowers.

Within the Sixth Circuit, only one case, *United States v. Corp*, 263 F.3d 325 (6th Cir. 2001), provides support for Bowers' argument. However, since that decision, the

---

[6] Other circuits have come to the same conclusion. For example, in *United States v. Holston*, 343 F.3d 83, 88-90 (2nd Cir.2003), the Second Circuit affirmed the district court's rejection of a constitutional challenge to § 2251 explaining:

> Congress has made legislative findings documenting that "there is an extensive commercial market in child pornography and that much of the material that feeds this market is 'homegrown,' that is, produced by amateur photographers. . . . Because much of the child pornography that concerned Congress is homegrown, untraceable, and enters the national market surreptitiously, we conclude that Congress, in an attempt to halt interstate trafficking, can prohibit local production that feeds the national market and stimulates demand, as this production substantially affects interstate commerce."

9

Sixth Circuit has painstakingly distinguished the unique facts of that case and, in subsequent cases, has repeatedly held the child pornography statutes to be constitutional.

In *Corp*, the 23-year-old defendant took photographs of his 26-year-old wife and another female who was only two months shy of her 18th birthday engaged in consensual sexual activity using equipment which was manufactured Germany. *Id.* 326. The pictures were not distributed or shown to others, and the 17-year-old was not deemed to be "exploited," but rather was found to be a consenting near-adult participant. The court held that 18 U.S.C. § 2252(a)(4)(B) was unconstitutional as applied to this unique defendant:

> Corp was not alleged to be a pedophile nor was he alleged to have been illegally sexually involved with minors other than Sauntman, who was merely months away from reaching majority. Clearly, Corp was not the typical offender feared by Congress that would become addicted to pornography and perpetuate the industry via interstate connections. Under these circumstances, the government has failed to make a showing that Corp's sort of activity would substantially affect interstate commerce.

236 F.3d at 333.

However, as indicated, cases decided by the Sixth Circuit after *Corp* have distinguished *Corp* on the "unique" facts of the case, and in every one of those cases has refused to find the child pornography statutes unconstitutional either facially or as applied. *See United States v. Chambers, supra*; *United States v, Gann, supra*; *United States v. Andrews, supra*, 383 F.3d at 378; *United States v. Dorman*, 108 Fed. App'x 228, 232 (6th Cir 2004); *United States v. Salazar*, 185 Fed. App'x 484, 487 (6th Cir. 2006);

10

*United States v. Ray*, 189 Fed. App'x 436, 447 (6th Cir. 2006); *see also*, *United States v. Halter*, 402 F. Supp. 2d 856 (S.D. Ohio 2005)   Indeed, as the court observed in *Salazar*, *supra*, *Corp*'s continued viability appears to be in doubt because the decision predates both the Supreme Court's decision in *Raich* and the Sixth Circuit's application of *Raich* to a § 2251 conviction in *Chambers*.  See *Salazar*, 185 Fed. App'x at 487.

      Moreover, even assuming that *Corp* has some continued viability, *Corp* itself directs that determination of whether the activity involved had a substantial effect on commerce is to be made on a case-by-case basis.  236 F.3d at 333.  The opinion further contains a suggestion that in future cases, courts should undertake the following examination in order to ensure that the jurisdictional reach of the statute is properly circumscribed:

> Was the activity in this case related to explicit and graphic pictures of children engaged in sexual activity, particularly children about fourteen years of age or under, for commercial or exploitive purposes? Were there multiple children so pictured? Were the children otherwise sexually abused? Was there a record that defendant repeatedly engaged in such conduct or other sexually abusive conduct with children? Did defendant move from place to place, or state to state, and repeatedly engage in production of such pictures of children?

*Id.*

      In this case, each of these questions are answered affirmatively and demonstrate that Bowers' actions have a sufficient effect on interstate commerce to pass constitutional muster.  First, the activity in this case related to pictures of children under the age of fourteen engaged in sexually explicit activity.  Bowers' daughter and her friend were

approximately 10 years old at the time the photographs were taken.  The photos Bowers took were not only of his daughter and her friend, but also of himself naked in the company of the girls. Further, the photographs spanned a period of several years.  As to other sexually abusive conduct, Bowers admitted to placing his penis in his daughter's mouth and also in her hand.  Bowers has admitted to showing these pictures to "lots of people."  He also admitted that he moved from place to place:  He most recently maintained two residences at the same time -- he resided at his mother's house in Mount Clemens, Michigan and at the house on Kean Street in Detroit where the photos were found.  Prior to living at those places, Bowers resided in Fairhaven Township, Michigan.

The foregoing facts demonstrate that even under the court's instructions in *Corp*, there is a constitutionally sufficient nexus between Defendant Bowers' actions and interstate commerce.

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss his Indictment is DENIED.

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated: December 17, 2007

**Certificate of Service**

I hereby certify that a copy of the foregoing **Opinion and Order Denying Defendant's Motion to Dismiss Indictment** was served on the attorneys of record by electronic means or U.S. Mail on **December 17, 2007**.

s/Kim Grimes
Acting in the absence of
LaShawn Saulsberry, Case Manager